## WILLIAM SEYMOUR,

### v.

## MARY JANE DE LANCEY and others.

Upon a bill for a specific performance of a contract for the sale of lands, and upon exceptions to the master's report in favor of the title, it appeared, that one link in the chain was a deed from L. found among the title papers accompanying the possession, but with respect to which the weight of evidence was, that the deed was not genuine. By excluding that deed, the complainant would be reduced to rely upon adverse possession, which was less than twenty five years. There was slight evidence that L. was an alien, and if not so, there was no account of his heirs or devisees.

Held to be a case proper for an issue at law.

If the complainant's title had been clearly adverse for twenty five years, it would not be sufficiently impeached by the possibility, either of an escheat, or of L's having left heirs or devisees, whose title would be protected by disabilities.

Such title by adverse possession for twenty five years, would be sufficient, if established, to preclude all other questions, and to be made the ground for a decree.

Equity does not compel a conveyance of a doubtful title.

But where the doubt is upon matters of fact, it may form a proper case for an issue at law.

Till the doubt should be removed, or confirmed, by further investigation, the court deemed it unfit in this case, either to decree performance, or to dismiss the bill.

THE bill in this cause was for a specific performance of a contract for the exchange of certain lots in the village of Newburgh, for two farms in other parts of the county of Orange. The cause was heard before the late chancellor in 1822, when the bill was dismissed. 6 John. ch. 222.

From that decree, the complainants appealed to the court of errors, where the decree was reversed. 3 Cowen 446.; and it was decreed, that one of the masters of the court of chancery should be directed to inquire, whether the appellant had, and could give, a good title to the lands agreed by him to be conveyed in exchange ; and if, upon coming in of the report, the chancellor should be of opinion that such title can be given, that a proper decree be made for the specific performance of the contract.

A decree having been entered in the court of chancery, in conformity with the order of the court of errors, the reference was had before master Hoffman, who, on the 2d of September 1824, made his report.

From this report it appeared, that the proceedings in the master's office, material to the question which now arose, were as follows :

The complainant laid before the master an abstract of his title, the material parts of which were to the following effect : .

" The complainant claims title to the premises, which, by the terms of the agreement mentioned and set forth in the pleadings in this cause, were to be conveyed by him to Thomas Ellison deceased, and which, in the said agreement, are described as follows" : (Here follows the description from the article) : " under, and by virtue of, the several deeds of conveyance, the letter of attorney and the will, hereinafter mentioned, and by an uninterrupted possession for more than thirty years."

I. " Benjamin Smith, by deed bearing date the 17th day of March, in the year of our Lord one thousand seven hundred and eighty two, and made between the said Benjamin Smith, by the name and description of Benjamin Smith of the precinct of Newburgh, county of Ulster and state of New York, yeoman, of the one part, and Henry Emanuel Lutterloh, of the same place, Esquire, of the other part, for the consideration of one hundred and sixty three pounds current money of New York aforesaid, did grant, bargain, sell, alien, release, convey and confirm, unto the said Henry Emanuel Lutterloh and to his heirs and assigns forever, all" &c., (according to description from deed No. 1)."

The abstract then goes on to state, with particularity, the following deeds :

II. A deed from Henry Emanuel Lutterloh of Wilmington in North Carolina, to Henry Lewis Lutterloh of the same place, dated the 16th of March 1786, for the consideration of £163 North Carolina currency.

III. A letter of attorney, from Henry Lewis Lutterloh to James Hallett, which is hereafter recited.

IV. A deed of James Hallett, by virtue of the said letter of attorney, to Robert Carter, dated the 21st of December 1790, for the consideration of 1,000 dollars, and hereafter referred to.

V. A deed of Robert Carter and Anne his wife, to James Hallett, dated the 22d of December 1790, for the consideration of 1,000 dollars.

VI. A deed of James Hallett and wife, to William Seymour, dated the 31st day of October 1800.

The VII. VIII. and IX. heads of the abstract are not material to this question.

X. " The said William Seymour, being thus seized of the premises in question, by virtue of the said several conveyances, on the 19th of January 1809, made and published his last will and testament attested in due form of law to pass real estate, whereby, after certain particular bequests and legacies, he devised all the residue of his estate whatsoever, to his three sons, Samuel Sands Seymour, Drake Seymour and the complainant, as tenants in common in fee simple, and departed this life on," &c.

XI. Not material to the present question.

XII. " Parol testimony will be offered to shew, that the said William Seymour and the persons claiming under him, have been in actual occupation and possession of the said property, claiming title thereto, as tenants or purchaser for upwards of thirty years."

The defendants filed objections to this abstract, which, being expressed in terms so general as not to designate the nature of the defect of title intended to be insisted on, were adjudged by the master to be not sufficiently precise, to allow an examination of witnesses, or an argument to be had thereon. The defendants then filed other objections, some of which were precise and definite ; but they insisted at the same time, that they were not precluded from taking other objections than those thus particularly specified.

The report then goes on to state the due execution of the deeds mentioned in the first and second heads of the abstract ; but, in relation to the second deed, the master adds, that several witnesses had been produced and examined before him, as to the genuineness of the signature of the said instrument, and that having carefully examined their testimony, it is not sufficient, in his opinion, to impeach the authenticity of the same.

The letter of attorney mentioned in the third head of the abstract, is recited in the report in the following terms :

" To all people, &c. I Henry Lewis Lutterloh, of Wilmington in the state of North Carolina, send with greeting : whereas the said Henry Lewis Lutterloh has purchased all the four lots lying and being in the town of Washington, below the town of Newburgh, on Hudson's river, in the state of New York, as by the deed and conveyance given by Henry Emanuel Lutterloh, I do here, by this present, constitute, authorize and empower, Mr. James Hallett, of the city of New York, coach maker, to sell the said four lots, as described above, to such person or persons, for such sums of money, as he shall think fit or otherwise ; and will confirm all such deeds, bargains and sales, and other conveyances, which shall be hereafter made, sealed, executed and delivered by him the said James Hallett.

In witness of my hand and seal, this 21st day of March 1786.

(Signed)   HENRY LEWIS LUTTERLOH. L. S.
THOMAS N. GAUTIER."

The report then states the deed from H. L. Lutterloh to James Carter, substantially as set forth in the abstract ; but it adds that no confirmation of that deed by the grantor, appeared. ·

It also set forth the deed from Carter and wife to Hallett, as in the abstract ; which was recorded in the clerk's office of Orange county, on the 19th of October 1812.

The deed from Hallett to William Seymour, of the 31st of October 1812, which is recorded in like manner, is also stated.

The master then states, that the said William Seymour, being by the means aforesaid seized in fee, made his will, duly executed to pass real estate, and thereby after certain demises, demised all the residue of his real estate to his three sons D. S., S. S. S., and William C. Seymour in fee : also that these premises were part of such residue.

The report concluded with an opinion, that the complainant has, and can make, good title, to the premises in question.

Certified copies of the deeds accompanied the report. That, from Hallett to Carter, was somewhat peculiar in its form and execution, as noticed by counsel in argument.

From the master's report of the parol testimony taken before him, it appeared, that Isaac Belknap a witness, testified that he knew the premises ; that it was his impression, that W. Seymour deceased was in possession of the property upwards of thirty years. Witness thought of buying the land of Hallett, who was reputed the owner, and who said that he held it as security, but could make the title good. Seymour inclosed the lots more than thirty years ago. He held under Hallett, till his purchase, and subsequently, as owner.

Four witnesses, who had great opportunities of knowing the hand writing of H. E. Lutterloh, testified, that in their belief, the signature of the deed from him to H. L. L. was not his hand writing. They agreed in the opinion, that the body of the deed, and the title of it on the back, were in his hand writing.

From these witnesses, it appeared, that H. E. L. was a military officer ; that he was a Prussian by birth ; that he died about 1786, a batchelor.

Gabriel Furman executor of Hallett testified, that he found among Hallett's papers, the several deeds mentioned in the 1st, 2d, 3d and 5th heads of the abstract, and that he delivered them to the solicitor for the complainant.

To the foregoing report of the master upon the title, exceptions were taken by the defendants, of which the following were the most material.

1st. That the master has reported, that William Seymour, being seised, made his will, &c., whereas it appeared, and so the master ought to have reported, that W. S. was not seised.

2d. That Hallett was not seised.

3d. That the master reports, that the testimony of the witnesses examined, was not sufficient to impeach the deed from H. E. Lutterloh.

4th. That the master ought to have reported, that the letter of attorney gave no power or authority to Hallett to convey the lots.

5th. That the deed from Hallett and H. L. L. to Carter, conveyed no title.

6th. That if Hallett became seised of any estate in the premises, the same was in trust for Henry Lewis Lutterloh and his heirs.

7th. That though the master has reported that no deed of confirmation from H. L. L. to Hallett appears, yet he has not reported as he ought, that for the want thereof, the title is defective.

These exceptions now came on to be argued.

MR. HOPKINS and MR. DYCKMAN for the defendants.

The question referred to the master was, " whether the complainant could make a good title." This is the proper question ; and it casts upon the complainant the burden of proving the affirmative.

But the master's report has reversed this order of things. He reports that the defendants' " testimony is not sufficient to impeach" the deed from H. E. Lutterloh. It was not for the defendant to impeach, but for the complainant to establish, that deed ; and in attempting this, his failure is complete. The testimony was here examined to show, not only, that there was no proof to support the deed, but, that it was disproved by unanswerable testimony.

The true question being, as stated in the order of reference, " whether the complainant can make good title ;" that question excludes much irrelevant matter here introduced. It excludes also all resort to a title under the statute of limitations.

On every reference to a master, the true and proper question relates to rightful title ; to a title under legal conveyances, and not by wrong.

But to refer to a master the examination of a title grounded on possession, either without, or in opposition to, a paper title, is contrary to all forms of procedure, and against the principles of this court.

The complex and difficult questions of disseisen and adverse possession, are the province of a jury and a court of law. A master has no adequate means to examine them.

All the savings of the statute, such as infancy, coverture &c., are also jury questions. And those questions may be

*1824.*

*SEYMOUR*
*v.*
*DE LANCEY.*

1824.
20th September.

brought forward by individuals, whom neither the master, nor the party, can find. Deeds and papers furnish a clue to such an enquiry : a title by naked possession furnishes none. And the savings of the statute may keep the title unsafe, for generations or centuries. Sugden vend. 270.

Adverse possession can only be brought before the master defensively. If a complainant were to produce, in the master's office, a paper title unaccompanied with possession, it would be necessary to examine that fact, so far, and so far only, as to prove the title bad.

But a complainant, relying on such adverse possession, does not establish his title, till he has proved that there are no individuals whose rights are saved ; that no reentries have been made; that no occupant has attorned to the rightful owner, &c. &c. Who can prove those negatives on one side, or where is the defendant to search, to find proof of the corresponding affirmatives ? No attempt is made in this case to prove any such thing in support of the title. And in this, and in all similar cases, the complainant is the person whose acts or confessions may have destroyed the effect of the statute ; and those acts and confessions, it is here his interest to conceal.

Sugden in his treatise on vendors, p. 269. &c., has discussed the effect of the English limitation of sixty years upon a title ; and he goes on to show, to how many exceptions such a title is liable. He mentions no case, and we believe none exists, in which a defendant has been compelled to accept a title by dissiesin, or adverse possession.

In point of fact, title by adverse possession, was not set up before the master. It is not mentioned in the report nor exceptions. There, the complainant attempted to make a rightful title; and it is only upon failing in that attempt, that a title by tort is now resorted to.

The elder Lutterloh died in 1786, a batchelor, and, manifestly, an alien. Nullum tempus occurrit populo : or if the limitation of forty years by the statute, is resorted to, still that time is not expired: so, the people's writ of escheat hangs over us.

The letter of attorney from Henry Lewis Lutterloh con-

tains no words of inheritance. No case has gone so far as to say, that a conveyance in fee can be grounded upon such a power. The case in 10 John. is put, by the court, upon the peculiar nature of a soldier's military right, before patent issued.

It is said, that the intent was, that a fee was to be conveyed. Is any evidence of that intent shown? Can such evidence be heard? Or is the rule of the common law reversed; so that every conveyance to A. B. simply, may, or must be taken as a conveyance in fee?

If the rule is thus altered, we ask again, how would be the case, where a man, intending to convey a life estate only, should simply convey the land to A. B.? Is this to be taken as a fee, regardless of the real intent, or is parol evidence to be here introduced?

Every power is to be construed strictly.

Hallett could not convey in his own name. On his repurchase he became reinvested with the title as trustee and not in his own right. It is asked, whether he could never sell? He might so: but he must act as trustee.

Hallett acquired no interest by his purchase, for want of a consideration paid. The deed expresses, that he sold to Carter, one day, for a thousand dollars; and bought, the next day, for the same sum. This court is not to be blindfolded by forms. The whole was one transaction; and so, no money passed. If no money, then no interest passed, under the statute of uses.

Then, after his pretended purchase, Hallett was still attorney. But if an attorney act in his own name it is void. 2 Lord Ray. 1418. 9 Co. 76. b. 6 T. rep. 177.

The deed to Carter is upon the face of it defective. In the premises it is expressed to be by Hallett and H. L. Lutterloh of the first part: it then refers by way of recital to the letter of attorney, and imports that " H. L. Lutterloh by the said J. Hallett his attorney conveys." At the end it is, " in witness whereof the parties have interchangeably set their hands and seals," and the execution of it is only " James Hallett" L. S.

No case has gone so far as to decide, that this is a good

execution of the deed by Lutterloh. The deed does not so import. Hallett had an incumbrance on the land ; and there is room for the intendment, that he did not mean to sign as attorney for Lutterloh. He may have intentionally left the execution imperfect, till some stipulation should be fulfilled.

As to the deed from H. E. Lutterloh, never was any signature disproved, by such overwhelming evidence. There are few men in the world whose hand writing can be either proved or disproved, by testimony so reputable, so strong, so well grounded in an intimate and familiar acquaintance, and, on the whole, so convincing. It seems he was a colonel in the revolutionary war : and one of the gentlemen, who disprove this hand writing, is well known to have been commissary general, and says, that he has seen his writing a thousand times. Another witness, equally decisive, was subsequently his partner in trade, and after that his administrator. No forgery was ever more clearly proved.

Again, the letter of attorney has no words of inheritance.

There is doubt in every link of this chain of title : or rather it is not so much doubtful, as clearly bad.

The court will not direct an issue. It can not do so, because the question here is not the same as at law. There, the issue must be whether Seymour had title or not. Upon that issue the jury may be compelled to give a verdict, on the slightest balance of testimony. For example, upon the alleged deed from H. E. Lutterloh, the jury if the question were doubtful must say upon the balance of evidence whether it is a deed, or no deed. But in this court, the issue is different ; it is whether the deed is clearly good.

" Good title," in the decree of the court of errors, must be taken with reference to the case. It means good title, in the sense of a court of equity, in a case of specific performance.

This last is an issue, which the common law has no rules for trying, nor means to try. The common law can furnish a judgment whether a plaintiff shall recover. But whether the plaintiff's title is a clear title, as contradistinguished from a doubtful one, it can not pronounce.

This distinction, between such titles as the court in its own opinion may think good, and such as it will pronounce to be

clearly good, is the governing one, upon this whole chapter of equity. The title must be free from suspicion, 2 Vez. 59. : not doubtful ; and if one link of the title depends upon a power of attorney, it is cause of objection, 2 Ves. 679. The equitable, as well as the legal title, must be clear, 2 Ves. jun. 526. : the court will not compel a defendant to take a title which it can not warrant, 1 Bro. c. c. 147. 1 Dessaus ch. 382. ; nor a title which may possibly be affected by an act of bankruptcy, though no commission be taken out, and no debt appears. 14 Ves. 547. So far is this distinction carried, that a purchaser at a master's sale, may be compelled to take a title, which his vendee will not be compelled to accept. Sugden 249.

According to these cases, and to numerous other cases to the same effect, the court can not compel the defendant to accept this title.

No finding of a jury upon an issue can at all vary the result.

MR. HENRY for the complainant. This is a case of an exchange of lands, and the parties have mutually delivered, and received, possession. Where the defendant had taken possession, and on the delivering of the abstract of title, made no objection, performance was decreed absolutely; the court would not even refer the question of title. 15 Ves. 593. And see 1 Mad. ch. 310. Sug. vend. 84. 89.

The decree of the court of errors in this case is peremptory, " if his honor the chancellor, upon the coming in of the report of the master, shall be of opinion that good title can be given, that a decree be made for specific performance" &c. 3 Cowen 536. This decree leaves no such discretion to the court, as has been alleged. It compels this court to decree a conveyance, if the title appears good.

The counsel went into a detailed examination of the testimony as regards possession, and as regards the authenticity of the title papers ; insisting that, upon both grounds, the title is good.

Among other facts it appears, that Ellison himself received a conveyance of lands, under the same title, to which his heirs now object.

1824.

SEYMOUR
v.
DE LANCEY.

The contested deed from H. E. Lutterloh was indisputa-bly written by him, however witnesses may differ as to the signature.

Possession has always accompanied that deed. It was found among the papers of Hallett. These facts are very decisive.

The letter of attorney from Lewis Lutterloh is a power to sell the land, and to sell it for money: that is a power to sell all the estate. To sell land, is to sell all the estate in land. It implies, or more truly, directly gives a power, to sell the fee, without words of inheritance. It has been decided in error, that an assignment of a soldier's right to military lands, is good without words of inheritance. Fisher v. Fields, 10 John. 495. This letter of attorney is but an authority. The fee proceeds from the owner. In Wood's Conveyancing, 3 vol. fol. ed. London p. 253, is a precedent of a letter of attorney to sell lands without words of inheritance.

As to the form of the execution of the deed from Lewis Lutterloh by Hallett, it is well settled, that the form of words used by the attorney, can not invalidate the act, where the authority is sufficient, and the intent to pursue it, appears. In 2 East, 142, it was held sufficient, though Wilkes the attorney signed " for James Brown, Matthias Wilkes."

There is no proof that Hallett was a trustee after he sold. All that is said to prove him such, is gratuitous. He sold fairly, and in due execution of his power, and bought the same land subsequently. There is no rule that a trustee can not be a purchaser. Only, the transaction may be questioned by the cestui qui trust, if he comes in a reasonable time. 5 Ves. 678.

But admitting he was a trustee; he had then the legal fee, and he has conveyed it. No notice of the trust appears to have reached Seymour. But if Seymour had notice, what would have been the consequence? The trust was to convey; and he has conveyed.

It is objected on this hearing, that the will of William Seymour does not appear to be duly attested to pass real proper-ty. First, that objection is not mentioned among the excep-tions; and it can not come in under any general words: no

exceptions can be noticed but such as are specific. Besides, the attestation will be presumed to be in good form, till the contrary appears. Finally, this and all other questions may be left to a jury, upon an issue.

The defendant in this case stands in a situation analogous to that of a purchaser, suing for his deposit, or to recover back a part of the consideration paid. He must prove affirmatively that the title is bad. It is not even enough to prove the opinion of conveyancers against it. Sug. vend. 174. The proof in such case is before a court of law and a jury. It is, then, very certain that such questions may be tried and determined at law. So may they, by an issue, in this case. And if the title is, as alleged, doubtful, such an issue is the true method to settle it.

But, in any case, the limitation of the statute covers and protects this title. In England, the investigation of the title is never, as a general rule, carried back more than sixty years. In this state, it should be twenty five years by the same analogy. 1 Mad. ch. 341. But the limitation never applies, in the case of a trustee in possession, because the possession is not adverse.

The objections made against the effect of the statute of limitations to protect titles, prove too much. Upon the principle of these objections, we must go back to the first source of title, in all cases ; for there may be outstanding rights against a paper title, as well as against a title by adverse possession ; and they may be saved for an indefinite extent of time, in one case, as well as the other.

Should the court deem the question at all doubtful, we pray for an issue.

THE CHANCELLOR. The master has reported, that in his opinion, the complainant can give a good title to the lands which were agreed to be conveyed to Thomas Ellison deceased : and ten exceptions to the report, are taken by the defendants. These exceptions object to opinions of the master, upon particular questions, which arose before him, and also to his conclusion, that the complainants' title is valid. The inquiry referred to the master, was, whether the com-

plainants' title is good or not ; and it will be sufficient here, to consider that question, as embracing all the exceptions.

The title to the lands now in question, was in Benjamin Smith, in 1782 ; and he then conveyed to Henry E. Lutterloh. A deed from Henry E. Lutterloh to Henry L. Lutterloh, bearing date the sixteenth day of March 1786, is produced ; and one question is, whether this deed is genuine or not. This deed has not been acknowledged or proved ; and it is not now proved to have been executed by Henry E. Lutterloh. It is in evidence, only upon the doctrine, that an ancient deed may be received without proof of its execution, when it is free from suspicion upon its face, and is offered to support a title concurrent with possession. This deed is impeached by four witnesses, John Anderson, Comfort Sands, David Wolfe and James Abeel. They state, that they knew the writing of Henry E. Lutterloh ; and that in their belief, the name subscribed to this deed, is not his hand writing. This testimony of four witnesses concurring in the same opinion, must destroy this deed, or at least, render its genuineness extremely doubtful.

William Seymour deceased was in possession of this land, during a long period ; but the commencement and duration of his possession, do not appear, with any exactness. Isaac Belknap a witness, says, that he thinks, that Seymour was in possession, upwards of thirty years ; and that Seymour, before his purchase from Hallett, held possession under Hallett. The land had been for a considerable time, uninclosed ; and Seymour's first occupation was by laying timber on it. The deed from Hallett and his wife to Seymour, bears date the thirty first day of October 1800 : and Seymour's possession prior to that time, seems to have been a very slight and imperfect occupation. The possession of Seymour, must I think, be regarded, as adverse and exclusive, only from the time of his purchase from Hallett; and if so, it was not of sufficient length, to give that species of title, which results from an adverse possession and the limitations of actions.

Henry E. Lutterloh died in 1786. It is suggested, that he was an alien ; and this suggestion is founded upon the testimony of Abeel, who says, that he thinks, that Henry E. Lut-

terloh was a Prussian. If he was an alien, the land escheat- **1824.** ed to the state. If he was a citizen, it does not appear, who **SEYMOUR** were his heirs or devisees. But if the possession of William **v.** Seymour, had been clearly adverse, for twenty five years, his **DE LANCEY.** title would not I think, be sufficiently impeached, either by the slight proof that Henry E. Lutterloh may have been an alien, or if he was a citizen, by the mere contingency that his title may have resided, since his death, in persons disabled to assert their rights.

There is no proof, that Hallett ever had possession of this land; unless the occupation of Seymour, for some time prior to 1800, is considered as the possession of Hallett. Seymour's occupation prior to 1800, might have been an adverse possession, if the title of Henry E. Lutterloh had been really conveyed to Hallett. But the only evidence that Henry E. Lutterloh ever conveyed his title, is the deed of the sixteenth day of March 1786, and according to the testimony, he never executed this deed.

In all the circumstances of the case, it is uncertain, whether the title of William Seymour is valid, by the mere force of adverse possession. If it is not good by adverse possession, it is still more doubtful, whether it is valid, by a regular derivation of right from Henry E. Lutterloh. I am accordingly of opinion, that the title of the complainant, as it has been exhibited before the master, is so far uncertain, that it must receive a farther investigation : and as this uncertainty arises from questions of fact, it is most proper, that they should be tried by a jury. If William Seymour acquired a title by adverse possession, such a title would preclude all other inquiries ; and the inquiry whether his possession was adverse or not, and the length of such a possession, are questions of fact. The inquiry whether the deed from Henry E. Lutterloh, is genuine or not, is purely, a question of fact. These questions are peculiarly proper for the trial by jury, as the best method of ascertaining their truth.

Equity does not compel a conveyance of a doubtful title ; and the defendants contend, that if this title is doubtful, the suit should be dismissed. This title is so uncertain, as to require farther elucidation ; but it would be premature and un-

**1824.**

**SEYMOUR**
**v.**
**DE LANCEY.**

fit, now to pronounce this title either bad, or so doubtful that the contract can not be executed. The master considers this title good; and I consider it not yet sufficiently ascertained. The uncertainty arises chiefly, from vague and obscure testimony; and this uncertainty may be removed, by farther testimony and another investigation of facts. The examination of this title, must therefore, be pursued. When a trial shall have taken place and a verdict shall have been given, upon all the testimony which the parties may be able to produce, the court must determine this question of title, which in my opinion, can not now be decided, with just satisfaction, in favour of either party. An issue is accordingly directed.