LETITIA C. BAKER, Appellant, *v.* OAKWOOD, Respondent.

Continuous adverse possession of land for a period sufficient to bar an action for its recovery not only cuts off the owner's remedy, but divests him of his estate and transfers it to the party holding adversely; the adverse possession is conclusive evidence of title in the latter.

In an action to recover an undivided fourth part of certain lands, it appeared that in 1840 H. owned an undivided fourth of a farm, of which the lands in question were a part, and R. owned the other three-fourths. R. conveyed the farm without excepting the one-fourth owned by H. and the grantees took possession. H. subsequently died intestate, leaving a widow and three children, of whom plaintiff was one. On foreclosure by advertisement of a mortgage on the whole farm, given by a former owner, no notice of the proceedings was served on the widow or the heirs of H. In 1849 L. received a conveyance of the title acquired under

the foreclosure sale and took possession, and in 1859 she conveyed the premises in question to defendant, a cemetery association, since which time down to the commencement of this action in 1886 defendant, claiming title, held and occupied the land, fencing and laying it out into lots and using it for cemetery purposes. Plaintiff became of age in 1852; the other two children of H. died prior to 1861 without issue and intestate; in the year 1885 the widow conveyed all her estate and interest in the land to plaintiff. *Held*, that the possession of defendant from the time of the conveyance to it was of a character to justify the conclusion that it commenced in an ouster of the heirs, and so terminated the joint tenancy, if it was not terminated before; that as to the one-third interest which plaintiff took directly from her father, and as to the widow's life estate, these estates were transferred to and became vested in defendant by adverse possession prior to the conveyance by the widow, and, therefore, her deed was ineffectual to convey any interest; that as to the other two-thirds, plaintiff's remainders therein were limited upon her mother's life estate, which has been acquired as aforesaid by defendant, and as this has not yet terminated, the action was not maintainable.

Reported below, 49 Hun, 416.

(Argued June 4, 1890; decided October 7, 1890.)

APPEAL from judgment of the General Term of the Supreme Court in the fourth judicial department, entered upon an order made July, 1888, which affirmed a judgment in favor of defendant entered upon a decision of the court on trial at Special Term.

This was an action to recover the undivided fourth part of about seventy-three acres of land in the possession of the defendant, a cemetery association.

In 1835, Richard Raynor, who is the common source of title, purchased a farm of about 154 acres, of which the lands now held by the defendant are a part, and being the owner of this farm in fee, mortgaged the same to Willet and Henry Raynor to secure his bond for $15,000. July 15, 1836, Richard Raynor conveyed the undivided half of this farm to the plaintiff's father, Charles B. Hargin, and one John S. Baker, and they executed back to him their bond and mortgage for $14,425 for the whole purchase-money. January 13, 1837, Richard Raynor assigned the last-mentioned bond and mortgage to Willet and Henry Raynor, the holders of the

bond and mortgage first mentioned. September 1, 1838, Willet and Henry Raynor, still holding the first bond and mortgage of $15,000, assigned the same, with other bonds and mortgages and collaterals, to the Mutual Life and Trust Company of New York, as collateral security for the payment of their own bond and mortgage given as security for a loan of $25,000 made by the company to them. On the 28th of May, 1838, Charles B. Hargin conveyed his one-fourth of the lands back to Richard Raynor, and, on the 29th of March, 1839, Baker conveyed his one-fourth to Hargin. This is the interest, and under this title the plaintiff claims. On the 20th of March, 1840, Richard Raynor conveyed the whole of the farm of 154 acres, without excepting the undivided quarter that had been conveyed to Hargin by Baker, to Willet and Henry Raynor, who took possession. The Mutual Life and Trust Company of New York was then the holder by assignment of the $15,000 mortgage given on the whole farm by Richard Raynor. On the 5th of July, 1845, the said Mutual Life and Trust Company assigned to Horace White of Syracuse the debt it held against Willet and Henry Raynor, being the loan above mentioned, and also the $15,000 mortgage, and all other collaterals held for the debt, for the consideration of $7,500 as expressed in the assignment. On the 5th of August, 1845, Horace White assigned the $15,000 bond and mortgage to Hamilton White of Syracuse for the consideration expressed of $3,500, but did not assign the debt of Willet and Henry Raynor to the trust company, nor the other collaterals thereto. On the next day, August 6, 1845, Hamilton White, the last assignee of the said bond and mortgage, commenced the foreclosure of the same in his own name by advertisement. The lands were sold November 1, 1845, and he became the purchaser for the sum of $3,000, as appears by the record. No notice of the proceedings to foreclose the mortgage was served upon the widow or heirs of Charles B. Hargin. March 22, 1848, Hamilton White, having become the owner through the foreclosure sale, conveyed the premises to Alfred H. Hovey for the consideration expressed of $7,000. May 29, 1849, Hovey

conveyed the lands to Lucy Maria Raynor, for the considera-
tion of $10,000, as expressed in the deed.   She took posses-
sion under this deed, deriving her title from the $15,000
mortgage, which covered the whole farm of 154 acres, as her
deed did.   On the 23d of September, 1859, Lucy Maria
Raynor and her husband Henry Raynor, conveyed about
seventy-three acres of the land, being the premises in question
in this suit, to the defendant by warranty deed for the con-
sideration of $15,000, which defendant paid.   Since that
time, and down to the commencement of this action in Jan-
uary, 1886, over twenty-six years, the defendant has held and
occupied the premises adversely, claiming title under the deeds
and conveyances above mentioned.

In 1840, Charles B. Hargin, the plaintiff's father and
grantee of an undivided one-fourth of the premises under
the deed from Baker, died intestate in the city of New York,
where he then resided.   He left a widow and three children,
who inherited his interest, subject to his widow's dower,
as follows: Letitia C., the plaintiff, born October 31, 1831,
became of age October 31, 1852, married in 1854, was
divorced, remained single some time, and married again.
The second child was Charles Hargin, born July 31, 1834,
was never married, and died July 8, 1861, intestate.   The
youngest, Mrs. Julia Pomeroy, was born December 18, 1838,
married Pomeroy February 23, 1858, had a child born June
5, 1859, who died in August, 1859, and she herself died in
December following, intestate, and shortly before she was of
age.   Her husband is still living.   The widow of Charles B.
Hargin is still living, and before she executed the deed herein-
after mentioned, the title of the one undivided quarter of the
premises, of which her husband died seized, had, as the plain-
tiff claims, descended under the statute and become vested in
the plaintiff and her mother as follows: The plaintiff took
one-third of her father's estate, or one-twelfth of the whole,
directly from her father upon his decease.   The plaintiff's
mother took an estate for life in the two shares that descended
to the other two children upon their death, with a remain-

der in fee to the plaintiff as the survivor. Before the commencement of this action, and on the 16th of October, 1885, the widow of Charles B. Hargin conveyed to her daughter, the plaintiff, all her estate and interest in the premises, in virtue of which the plaintiff claims that the life estates that descended to her mother are merged in the remainders, and the plaintiff, as remainderman, has a present right of action. The cause was tried by the court and judgment rendered for the defendant. It was held that as to the one-third which the plaintiff took directly from her father, she could have sued for it on becoming of age, and not having done so, she is barred now by defendant's adverse possession, and that as to the two-thirds in which she inherited a remainder, the mother could have recovered a life estate on the death of the other two children; that the mother, after twenty years of adverse possession by the defendant, lost this estate, and it became vested in the defendant, and consequently, when the deed of October, 1885, was given, the mother had no estate to convey.

Further facts are stated in the opinion.

*W. S. Andrews* for appellant. Mr. Pomeroy has no estate by the curtesy in the undivided twelfth of the premises in question that descended to his wife Julia. (*Jackson* v. *Jackson*, 5 Cow. 74–98; *Adair* v. *Lott*, 3 Hill, 182; *Ferguson* v. *Tweedy*, 43 N. Y. 543; *Graham* v. *Ludington*, 19 Hun, 246; 1 Bishop on Married Women, 498, 499; Gerard's Titles to Real Estate [3d ed.], 165; 1 Washb. on Real Prop. [4th ed.] 173; *Den* v. *Demarest,* 1 Zab. 525; *Vrooman* v. *Shepherd,* 14 Barb. 441; *Mercer* v. *Seldom,* 1 How. [U. S.] 37–54.) The release executed by Mrs. Hargin shortly before the commencement of this action, does not offend against the statutes respecting champerty. (*Creary* v. *Goodman*, 22 N. Y. 170; *Stevens* v. *Hauser*, 39 id. 302; *Coleman* v. *I. Co.*, 26 Hun, 525; *Jackson* v. *Gumaer*, 2 Cow. 552; *Requa* v. *Holmes*, 26 N. Y. 338; 2 R. S. chap. 1, tit. 2, §§ 32, 142; Co. Litt. §§ 479, 480; 6 Bacon's Abridg. 615.) By virtue of this release the life estates that descended to Mrs. Hargin from her

son Charles and her daughter Julia are merged in the remainder, and the remainderman has a present right of action. (Angell on Lim. 4; Tyler on Eject. 88; 3 Greenl. on Real Prop. 430; *Davenport* v. *Tyrrel*, 1 Wm. Black. 679; *Beckford* v. *Wade*, 17 Ves. 87; *Scott* v. *Nixon*, 3 Dru. & W. 388, 403; *Society* v. *Richards*, 1 id. 250–289; *Dundee* v. *Dongall*, 1 Macq. 317; Digby on Real Prop. 159; *In re Brown*, 21 Wend. 316; *Theriat* v. *Hart*, 2 Hill, 380; Code Civ. Pro. § 368; *Jackson* v. *Varick*, 2 Wend. 294; *De Beauvoir* v. *Owen*, 19 L. J. Exch. 177; *Dawkins* v. *Penhryn*, 4 App. Cas. 51; *Humbert* v. *Trinity Ch.*, 24 Wend. 587; *Overing* v. *Russell*, 32 Barb. 264; *Jackson* v. *Smith*, 13 Johns. 427; *Deconche* v. *Savetier*, 3 Johns. Ch. 190; *Lincoln* v. *Battelle*, 6 Wend. 475; *R. Church* v. *Schoolcraft*, 65 N. Y. 134, 147; 3 Greenl. on Real Prop. 423; *Jackson* v. *Moore*, 6 Cow. 706–725; *Good Title* v. *Baldwin*, 11 East. 488; *Jackson* v. *Lunn*, 3 Johns. Cas. 109; *Van Dyke* v. *Van Buren*, 1 Caines, 84; *Jackson* v. *Russell*, 4 Wend. 542; *Russell* v. *Schuyler*, 22 id. 277; *Jackson* v. *Lamb*, 7 Cow. 431; *Jackson* v. *Cole*, 4 id. 587; *Ottenger* v. *Strasburger*, 33 Hun, 466; *Schauger* v. *Bogert*, 2 Wend. 13, 59; *Mayor, etc.*, v. *Hoyner*, Cowp. 102; *Colvin* v. *Walford*, 20 Md. 357; *Nieto* v. *Carpenter*, 21 Cal. 455; *Doe* v. *Cook*, 6 Bing. 174, 179; *Doe* v. *Wright*, 2 B. & A. 710; *O'Connor* v. *Higgins*, 113 N. Y. 511; *Mayor, etc.*, v. *Carleton*, Id. 284.) Neither the life estate in Mrs. Hargin nor that in Mr. Pomeroy (should he be considered a tenant by the curtesy), as they are barred by twenty years' adverse possession, can be used by the defendant to defeat this action. (*Hoag* v. *Hoag*, 35 N. Y. 469, 473; *Foster* v. *Joyce*, 3 Washb. 498; *East* v. *Pedin*, 6 West. Rep. 291; *Jackson* v. *Hardin*, 4 Johns. 202; *Jackson* v. *Hudson*, 3 id. 375–381; *Sharp* v. *Johnson*, 22 Ark. 79; *Dickinson* v. *Cowen*, 1 Swan. 516.) The court erred both in admitting the records as evidence of the pretended foreclosure of 1845, and in admitting any evidence either of the assignment from Horace White to Hamilton White, dated August 5, 1845, or of the said foreclosure. (*Mowry* v. *Sanborn*, 65 N. Y. 581; *Cooper* v. *Kneeland*, 17

Abb. Pr. 342; *Merritt* v. *Bartholick*, 36 N. Y. 44; *Wanzer*
v. *Cary*, 76 id. 526; *Bunce* v. *Reed*, 16 Barb. 347; *Howard*
v. *Hatch*, 29 id. 297; *Van Slyke* v. *Sheldon*, 9 Barb. 278;
*Stanton* v. *Kline*, 16 id. 9; *Mickles* v. *Dillaye*, 15 Hun,
296.)    The defendant is not entitled to be regarded as
a mortgagee in possession of the premises in question.
(*Wing* v. *Field*, 35 Hun, 617, 620; *Bennett* v. *Austin*,
81 N. Y. 308, 316; *Gross* v. *Welwood*, 90 id. 638; *Howell*
v. *Leavitt*, 95 N. Y. 617; *Russell* v. *Ely*, 2 Blacks. [U. S.]
575; *Stoddard* v. *Weston*, 25 N. Y. S. R. 922.)    Plain-
tiff is not barred by the Statute of Limitations as to the share
that descended to her from her sister Julia. (*Florence* v.
*Hopkins*, 46 N. Y. 182; *Jackson* v. *Johnson*, 5 Cow. 74;
*Jackson* v. *Sellick*, 8 Johns. 207; *Jackson* v. *Schoonmaker*, 4
id. 401; *Cristie* v. *Gage*, 71 N. Y. 193; *Vrooman* v. *Shephard*,
14 Barb. 441; *Moore* v. *Jackson*, 4 Wend. 58; *Jackson* v.
*Mancius*, 2 id. 357; *Clarke* v. *Hughes*, 13 Barb. 147; *Con-
stantine* v. *Van Winkle*, 6 Hill, 177; *Eaton* v. *Sanford*, 2 Day,
523; *Fleming* v. *Burnham*, 100 N. Y. 1; *Lee* v. *Horton*, 25
Wkly. Dig. 473.)    The plaintiff is not barred by adverse pos-
session as to the share that descended to her from her brother
Charles. (*Jackson* v. *Johnson*, 7 Cow. 74; *A. B. & C. Co.* v.
*Connor*, 103 N. Y. 502; *Doherty* v. *Matsell*, 22 J. & S. 17;
*Simms* v. *H. Ins. Co.*, 13 Wall. 158; *Hanger* v. *Abbott*, 6 id.
532; 9 id. 687; *Simms* v. *Simms*, 30 Miss. 33; *Abbott* v.
*McElroy*, 10 S. & N. 100; *Dowell* v. *Webber*, 2 id. 452; *Har-
rison* v. *Henderson*, 7 Heisk. 315–335; *Tarver* v. *Cowart*, 2
Ga. 66; *Lawton* v. *Bowman*, 2 Strots, 190; *Willard* v. *Clarke*,
7 Metc. 435; *P. Bank* v. *Bank of Alexandria*, 10 G. & J.
346; *Wall* v. *Robson*, 2 N. & McC. 498; *J. Ins. Co.* v. *Stew-
art*, 6 A. L. Reg. 732; *Trecothick* v. *Austin*, 4 Mason, 16;
*Wilcocks* v. *Higgins*, 2 Strange, 907; *Clarke* v. *Hughes*, 13
Barb. 147; *Jackson* v. *Johnson*, 5 Cow. 74–96.)    The defend-
ant is in possession of all the premises described in the com-
plaint. (*B. C. Cemetery* v. *City of Buffalo*, 46 N. Y. 503;
*Richards* v. *Church*, 32 Barb. 42; *Sohier* v. *Church*, 109
Mass. 1; *Dwenger* v. *Geary*, 37 Alb. L. J. 167.)

*George F. Comstock* for respondent. Without going back of the purchase by Oakwood, the proof of the adverse character of its own occupation for the last twenty-six years is complete, because, in addition to a purchase by deed with covenants of warranty of the whole title from a party in the actual occupation claiming title, such purchase was made openly and notoriously for a purpose or use which was public, and which, by absolute necessity, excluded all other possible or conceivable uses; and because the purchaser immediately entered, and openly and notoriously before all the world devoted the land perpetually to such uses. (*Bennet* v. *Clemens*, 6 Allen, 11, 18; *Jones* v. *Weathersley*, 4 Strob. 1; *Millard* v. *McMullen*, 68 N. Y. 345; *Lawrence* v. *Hopkins*, 56 id. 182; *Jackson* v. *Brink*, 5 Cow. 483; *Jackson* v. *Tibbetts*, 9 id. 241; *Frederick* v. *Gray*, 10 S. & R. 182; *R. R. Co.* v. *Quick*, 61 Penn. St. 328; *McHaffy* v. *Dobbs*, 9 Watts, 363; *Lowe* v. *Patterson*, 1 W. & S. 184; *McCummings* v. *Wyman*, 10 Mass. 464; *Forward* v. *Dootz*, 32 Penn. St. 69; *Anders* v. *Anders*, 9 Ired. 214; *Larman* v. *Huey*, 13 B. Mon. 436; *Gill* v. *Fontleroy*, 8 Mon. 177, 186; *Abercrombie* v. *Baldwin*, 15 Ala. 363; *Newell* v. *Woodruff*, 30 Conn. 492; *Barrett* v. *Coburn*, 3 Metc. 510; *Ryder* v. *Maul*, 46 Penn. St. 376; 4 N. Y. 61; Angel on Lim. §§ 400, 401, 404, 429; 4 Mason, 326; 3 Watts, 72; Code Civ. Pro. §§ 369, 370; Code of 1849, §§ 82, 83, 85.) Plaintiff being under no disability for two years or thereabouts after she became of age, the rule is perfectly settled, both by statute and at common law that her subsequent marriage or marriages did not create any disability which the laws of limitation recognize. (Code Pro. § 106; Code Civ. Pro. § 408; Wood on Lim. 480, 481; Laws of 1870, chap. 741, § 5; *Clark* v. *Gibbons*, 83 N. Y. 107, 109; *Acker* v. *Acker*, 61 id. 148; Code Pro. § 88; Code Civ. Pro. § 376.) If it be said that the Statute of Limitations only extinguishes the remedy as distinguished from the title, it is sufficient answer to say that an extinguished remedy is no more capable of transfer than an extinguished right or title. (68 N. Y. 345; 86 id. 576; Hopkins' Ch. 436.) At the time of this attempted

transfer, the whole premises were in the adverse occupancy of the defendant, and her deed of conveyance was, therefore, absolutely void by the statute of champerty. With full knowledge of such hostile occupancy, she made this conveyance for the very purpose of enabling the plaintiff to bring an action which she could not herself maintain. (1 R. S. 739, § 147; *Pepper* v. *Haight*, 20 Barb. 429; *Howard* v. *Howard*, 17 id. 663.) The defendant has the rights of a mortgagee in possession. (*Lockwood* v. *McBride*, 53 N. Y. 268; *Raynor* v. *Raynor*, 21 Hun, 36.)

O'BRIEN, J. The findings of the court below are to the effect that, upon the death of Charles B. Hargin in 1840, the undivided quarter of the lands in question descended to his three children, of whom the plaintiff is one, subject to the widow's dower. By the subsequent death of two of the children, without issue and intestate, the estate which the ancestor had at the time of his death became vested in the plaintiff as the surviving child, subject to a life estate in two of these shares in the widow. But it is also found that since 1849, when Lucy Maria Raynor purchased the whole farm from Hovey, and went into possession, the whole premises have been held adversely, first by Mrs. Raynor under her deed, and since 1859, by the defendant under its conveyance from Mrs. Raynor. The heirs of Hargin became tenants in common with the other owners, and the findings of adverse possession implies that the possession of Mrs. Raynor was such as to amount to an ouster of her co-tenants. Whatever may be said in regard to the nature of Mrs. Raynor's possession, whether hostile or not, there can be no doubt that the possession of the defendant from the time that it purchased the land in 1859 to the time of the commencement of this action was of such a character as to justify the conclusion that it commenced in an ouster of the heirs. It was the case of the purchase by a public corporation, organized in perpetuity, of lands to be devoted to the burial of the dead, followed by enclosing, improving and laying out the land in such manner

and devoting it to such use as was utterly inconsistent with every other claim of title, and this was a termination of the joint tenancy, if it was not terminated before. (*Zapp* v. *Miller*, 109 N. Y. 51; *Millard* v. *McMullin*, 68 id. 345; *Florence* v. *Hopkins*, 46 id. 182.) The effect of this adverse possession upon the life estate of Mrs. Hargin is the most important question in this case. The courts below have held that its effect was not only to cut off her remedy for its recovery, but to extinguish the estate itself and vest it in the defendant. If the contention be correct that the defendant in virtue of its adverse possession took to itself the life estate, then Mrs. Hargin, when she executed to the plaintiff the deed of October, 1885, had nothing to convey and that deed was ineffectual. The learned counsel for the plaintiff, perceiving the importance of this point, has addressed himself to its solution with most commendable learning and industry. Perhaps the highest praise that can be awarded to his argument is to record the fact that it drew from his distinguished adversary a generous but well-deserved compliment at the bar. We cannot, however, assent to the proposition that adverse possession of land for a period sufficient to bar an action merely cuts off the owner's remedy without affecting the estate. While this principle is not without the sanction of judicial authority, and that of text-writers, we think that the tendency of modern decisions in this and most of the states, as well as in the federal tribunals, is against it. It was held that the effect of the English Statute of Limitations (21 Jac. 1, chap. 16) was to bar the remedy, but not to divest the estate. (*Davenport* v. *Tyrrel*, 1 Wm. Black, 679; *Beckford* v. *Wade*, 17 Ves. 87; *Scott* v. *Nixon*, 3 Dru. & War. 388, 403; *Incorporated Soc.* v. *Richards*, 1 id. 258, 289; *Trustees of Dundee Harbor* v. *Dougall*, 1 Macq. H. L. Cas. 317; Digley's Hist. Real Prop. 159; 3 Cruise on Real Prop. 430.) But the construction placed by the English courts upon that statute was not acceptable to a more liberal and enlightened age. The commission of 1828 appointed to reform the anomalies and abuses of the law reported, and parliament enacted

a new statute in respect to the possession of land (3 and 4 Wm. IV, chap. 27), the thirty-fourth section of which not only barred the remedy in case of adverse possession, but in terms extinguished the estates. (Angell on Lim. chap. 2, 10; App. [5th ed.] 15.) Since the passage of this statute it is held that adverse possession for a period sufficient to bar the action divests the estate of the true owner, and transfers it to the party holding adversely. (49 Hun, 420, and cases there cited.)

But the doctrine of the English courts, giving construction to the Statute of James, does not seem to have been followed in this state. It is true that Judge COWEN, in the course of a long and able opinion in the case of *Humbert* v. *Trinity Church* (24 Wend. 587), remarked that it was of the nature of the Statute of Limitations, when applied to civil actions, "to mature a wrong into a right by cutting off the remedy;" and, again, when speaking of actions brought by the true owner after the bar of the statute, "his title remains, but he has lost his remedy." The question in that case was whether the long-continued adverse possession of the defendant barred the plaintiff's action, and it was held rightly that it did. The effect of an adverse possession as a means of acquiring title was not, however, involved in the case. The doctrine that a Statute of Limitations merely extinguishes the remedy has been frequently applied to contract obligations. As thus applied, the principle cannot be disputed. Time may bar an action upon the promise or contract, but it does not pay the debt. That remains as a moral obligation at least, and is a good consideration for a new promise. Adverse possession of tangible property implies not only the lapse of time, but the occupation and enjoyment by the possessor, and the acquiescence of the true owner in a hostile claim of title. The idea that the title to property can survive the loss of every remedy known to the law for reducing it to possession and enjoyment would seem to have but small support in logic or reason. Enactments which are appropriately termed statutes of *repose* when applied to the adverse possession of land, have, as it seems to us, a broader and deeper effect than simply to destroy the remedy of the true owner for its recovery.

One of the earliest cases in this state upon the question is *Jackson* v. *Dieffendorf* (3 Johns. 269), decided nearly a quarter of a century before the change made in the English Statue (21 Jac. 1, chap. 16). In that case a party who could show no other title to land than an adverse occupation for thirty-eight years, was at the end of that period put out of possession by another, who had the paper title, under a judgment in ejectment obtained by default, and the party recovering the judgment, and in whose deed the premises were included, went into possession. The dispossessed party then brought another action of ejectment against the person who had turned him out, and who had a deed of the land, for the purpose of repossessing himself of what he had lost. The court held that he was entitled to recover upon the ground that the adverse possession was conclusive evidence of his title. The doctrine of that case on this point has never been disturbed, and the case itself has frequently been cited with approval in this court. (*Baldwin* v. *Brown*, 16 N. Y. 364; *Reed* v. *Farr*, 35 id. 117.)

The case of *Cahill* v. *Palmer* (45 N. Y. 478) was an action to recover money paid to the defendant for certain lands taken for Central Park. Both parties claimed to own the land for which the money was paid by the city. A statute provided that when the money was paid to the wrong person the real owner of the land might bring and maintain an action to recover it from the party to whom paid. The plaintiff had the paper title to the land, and the defendant, to whom the money was paid, showed an adverse possession for more than twenty years prior to the time the land was taken by the city. This court held that the money was properly paid to the defendant and that the plaintiff could not recover. GROVER, J., referring to the point now under consideration said: "The counsel for the appellant insists that an adverse possession, although for the length of time required by statute to bar the owner, is available only as a defense to a suit brought by such owner for the recovery of the land. In this the counsel is in error. When the possession is actual, exclusive,

·open and notorious, under a claim of title adverse to any and all other for the time prescribed by statute, such possession establishes title. To uphold it, a grant from the true owner to such party may be presumed." In *Reformed Church* v. *Schoolcraft* (65 N. Y. 134), it was held that adverse possession for the period prescribed by the statute to bar an action was sufficient proof of title upon which to maintain an action of ejectment against parties in possession without title. The policy upon which the Statute of Limitations was based when applied to real property was examined and the conclusion reached in that case that the real owner's title is lost by acquiescence in adverse possession by another, and that the title lost is gained by the party in possession.

In *Barnes* v. *Light* (116 N. Y. 34), it was held that an action of ejectment, founded upon adverse possession alone, may be maintained by the party in whose favor the adverse possession has run, even against the true owner. This case was decided mainly upon the authority of *Sherman* v. *Kane* (86 N. Y. 58); *Carleton* v. *Darcy* (90 id. 566); *Mayor, etc.*, v. *Carleton* (113 id. 284), in all of which the principle is recognized that title may be obtained by adverse possession alone.

In *Millard* v. *McMullin* (68 N. Y. 345) it is held that such a title is sufficient to uphold the lien of an execution. A clear adverse possession for twenty years constitutes a title, which a purchaser at a judicial sale may not refuse. (*Seymour* v. *DeLancey*, 1 Hopk. Ch. 436; *Mott* v. *Mott*, 68 N. Y. 246; *Shriver* v. *Shriver*, 86 id. 575 ; *O'Connor* v. *Huggins*, 113 id. 511.)

The Supreme Court of the United States has repeatedly asserted the recognized rule of the Roman law that adverse possession is one of the modes of acquiring title to property. In *Campbell* v. *Holt* (115 U. S. 620), Mr. Justice MILLER, delivering the opinion of the court, said : " By the long and undisturbed possession of tangible property, real or personal, one may acquire a title to it, or ownership, superior in law to that of another, who may be able to prove an antecedent and, at one time, paramount title. This superior or antecedent

title has been lost by the *laches* of the person holding it in failing within a reasonable time to assert it effectively; as, by resuming the possession to which he was entitled, or asserting his right by suit in the proper court. What the primary owner has lost by his *laches* the other party has gained by continued possession, without question of his right. This is the foundation of the doctrine of *prescription,* a doctrine, which in the English law is mainly applied to incorporeal hereditaments, but which in the Roman law, and the Codes founded on it, is applied to property of all kinds." After pointing out the fact that possession was the earliest mode known to mankind for the appropriation of any thing tangible to the use of one, and to the exclusion of all others, and that it was always a means of acquiring title he adds: " The English and American Statutes of Limitations have in many cases the same effect, and if there is any conflict of decisions on the subject, the weight of authority is in favor of the proposition, that where one has had the peaceable, undisturbed open possession of real or personal property, with an assertion of his ownership for the period which, under the law would bar an action for its recovery by the real owner, the former has acquired a good title; a title superior to that of the latter, whose neglect to avail himself of his legal rights has lost him his title. This doctrine has repeatedly been asserted in this court. (*Leffingwell* v. *Warren,* 2 Black, 599; *Croxall* v. *Shererd,* 5 Wall. 268, 289; *Dickerson* v. *Colgrove,* 100 U. S. 578, 583; *Bicknell* v. *Comstock,* 113 id. 149, 152.) It is the doctrine of the English courts, and has been asserted in the highest courts of the states of the Union."

The principle has also the sanction of two eminent authors on the law of limitations. Judge COOLEY, in his recent work referring to this question, says: " When the period prescribed by statute has once run so as to cut off the remedy which one might have had for the recovery of property in the possession of another, the title to the property, irrespective of the original right, is regarded in the law as vested in the possessor, who is entitled to the same protection in respect to it which the

owner is entitled to in other cases. A subsequent repeal of the limitation law could not be given a retroactive effect so as to disturb this title. It is vested as completely and perfectly, and is as safe from legislative interference as it would have been had it been perfected in the owner by grant, or by any species of assurance." The learned author, admitting that there is controversy in regard to the point, has collected in a note the decisions of the highest courts in several of the states sustaining the doctrine stated in the text. (Cooley on Const. Lim. [5th ed.] 449.)

In the other treatise on this subject, which is of highest authority, it is said: "As a general doctrine, it has too long been established to be now in the least degree controverted, that what the law deems a perfect possession, if continued without interruption during the whole period which is prescribed by the statute for the enforcement of the right of entry, is evidence of a fee. Independently of positive or statute law, the possession supposes an acquiescence in all persons claiming an adverse interest, and upon this acquiescence is founded the presumption of the existence of some substantial reason (though perhaps not known) for which the claim of an adverse interest was forborne. Not only every legal presumption, but every consideration of public policy, requires that this evidence of right should be taken to be very strong, if not of conclusive force." (Angell on Lim. chap. 31, 373.) The same learned author seems to treat prescription and adverse possession, so far as this question is concerned, as practically the same thing. (Id. chaps. 1, 2.)

These authorities, and others that might be cited, show that title to an estate in land may be acquired by one and lost by another by means of adverse possession. This principle has become a rule of property that cannot now be disturbed without grave injury to titles. There is no serious claim that the plaintiff can recover the share which she took direct from her father, and as to the other two shares the plaintiff's remainders are limited upon her mother's life estate which the defendant has absorbed in its adverse possession, and is not yet termi-

nated, as under the principles above stated she had nothing to convey and nothing passed to the plaintiff under the deed of October, 1885. Hence, the plaintiff's rights are to be determined in this case in the same way as if the deed had not been executed at all. This point is, we think, decisive of the case, and it is not necessary to examine the questions so ably discussed, whether the conveyance offends against the champerty statutes; whether the defendant is entitled to the rights of a mortgagee in possession, or when, and under what circumstances, a defendant in ejectment can protect his possession by an outstanding title in another.

The judgment should be affirmed.

All concur except Andrews, J., taking no part, and Gray, J., not voting.

Judgment affirmed.