LEWIS H. CARPENTER et al., Respondents, *v.* COLES A. CARPENTER et al., Appellants.

Where one or more tenants in common are in the actual possession and control of the common property, they may not buy in an outstanding title to defeat the rights of their co-tenants, and are bound to do nothing with a view to prejudice their interests.

C. died leaving a widow and seven children, and several minor children of a deceased son. Another son died shortly after his father, leaving several minor children; C. left a large amount of personalty, two farms and other real estate. Upon each of the farms was a mortgage long past due; each was worth many times the mortgage thereon. C., by his will, devised the real estate, one-eighth to each child living, and one-eighth to the issue of his deceased child, subject to a provision as to the occupation of a house and lot on one of the farms; the use of the personalty was given to his widow for life, and after her death it was distributable as provided for in case of the real estate. Two sons of C. were appointed executors, who took control and managed the real estate, receiving the rents and income thereof. The executors, with the other surviving children of C. and his widow, entered into a scheme to obtain title to the farms, cutting off the interests of the children of the deceased sons. To this end the executors, although having in their hands sufficient of the rents and profits to pay interest on the mortgages, which was all the holders required, defaulted therein and induced the holders to foreclose. Each of the farms were bid in by one of the children for the amount due on the mortgage, with costs. The purchaser executed a new mortgage on the lands covered by one of the mortgages, to secure the purchase-price; the executors advanced to her moneys of the estate to pay the purchase-price of the farm covered by the other mortgage, taking a mortgage thereon as security. The purchaser then conveyed to her mother a life estate in one of the farms, and to each of her brothers and sisters a one-fifth part of both farms. In an action brought by the children of the deceased sons, *held*, that the titles acquired under the foreclosures and the deeds in severalty subsequently made were subject to a trust in favor of plaintiffs to the extent of a one-fourth interest in the property.

The will of C. directed his executors to pay all just and legal demands against his estate. *Held*, that this was insufficient to charge the personalty with either principal or interest of the mortgage debts.

The executors brought an action for partition of the testator's real estate, aside from the farms; all parties in interest were joined and served with process, and the action was regularly prosecuted; the property was sold pursuant to the judgment therein, and bid in by one of the executors. *Held*, that no legal duty was violated by the defendants in instituting

the partition suit; and that they could not be charged as trustees for plaintiffs in respect of the property so sold.

The provision as to the house and lot, or "Homestead," reserved it for the use of certain of the testator's children. The devise to the children was of "all my other landed property." Following this was the bequest of the personal property, and then this provision: "Whatever other property I may be·possessed of at the time of my decease, and which is not disposed of in the foregoing, I give to my wife." *Held*, that the testator's widow did not take the "Homestead" under the will, but that it passed with the other landed property to the children and their issue, subject to the right of occupancy.

(Argued December 16, 1891; decided February 9, 1892.)

APPEAL from judgment of the General Term of the Supreme Court in the second judicial department, entered upon an order made December 8, 1890, which affirmed so much of a judgment entered upon a decision of the court on trial at Special Term, as was in favor of plaintiff, and reversed and granted a new trial as to so much thereof as was in favor of defendants.

This action was brought by plaintiffs, who are the children of two of the deceased sons of James S. Carpenter, deceased, and the widow of one of said sons, against the widow and the six surviving children of said James S. Carpenter, to have set aside and canceled of record, as fraudulent and void, the proceedings and judgments in two actions for the foreclosure of mortgages, and in an action for the partition of real estate and for other relief, etc.

The questions arose under the will of James S. Carpenter, deceased, the material portions of which are as follows:

"4. The house in which I live and the lot on which it stands as hereinafter described shall be reserved for those of my children who have no family and for those of my family who are destitute of a home and are not able to work.

"5. All my other landed property to be sold or divided equally among my children as they all may think best, but nothing shall be done contrary to the wishes of their mother while she lives.

"7. My wife is to have the use of all my money estate dur-

ing her life.   *   *   *   All the money is to be equally divided among the children after their mother is done with it.

"10. Whatever other property I may be possessed of at my decease, and which is not disposed of in the foregoing, I give to my wife at her free disposal."

The facts, so far as material to the foreclosure suits, as well as other material facts, are sufficiently stated in the opinion.

The action of partition was brought by the defendant Coles A. Carpenter against the other parties hereto. By the judgment therein the premises were ordered to be sold; they were so sold and were bid in by defendant Coles A. Carpenter for $800.

*Josiah T. Marean* for appellants. The reversal was on questions of law only. (Code Civ. Pro. § 1338.) Whatever remedy, if any, these plaintiffs had by reason of the alleged inadequacy of price, it must have been sought in the action for partition itself. Courts of equity do not entertain independent actions for such purpose. (*Sanders* v. *Soutter*, 126 N. Y. 199.) Wrongs committed by the defendants or duties neglected by them in pursuance of a common intention, will not raise a trust where such acts or neglect without combination would not have that effect. (Cooley on Torts [2d ed.], 143, 144; *Hunt* v. *Simonds*, 19 Mo. 583; *B. L. O. Co.* v. *Everest*, 30 Hun, 586; *L. O. Co.* v. *S. O. Co.*, 42 id. 153.) Malicious motive is not material where no right is violated and no legal duty is neglected, however seriously prejudicial the consequences resulting may be. Courts in such cases will not inquire whether the party has been actuated by malice. (*Phelps* v. *Nowlem*, 72 N. Y. 39; *Auburn, etc.,* v. *Douglass*, 9 id. 450; *G. I. Co.* v. *Uhler*, 75 Penn. St. 467; *S. R. Bank* v. *S. Bank*, 27 Vt. 505; *Hutchins* v. *Hutchins*, 7 Hill, 104; *Hunt* v. *Simonds*, 19 Mo. 583, 588.) Defendants had a right to have the mortgages foreclosed. (*Wright* v. *Holbrook*, 32 N. Y. 589.) The mere fact that the purchaser was a tenant in common of the equity of redemption, does not incapacitate him from purchasing for his own account. (*Streeter* v.

*Schultz*, 45 Hun, 406 ; Freeman on Co-tenancy, § 165.)   A plaintiff must stand by the theory of his case as presented by his complaint and on the trial.   (*H. Ins. Co.* v. *W. T. Co.*, 51 N. Y. 93 ; *Stephenhorst* v. *Wolff*, 65 id. 596 ; *Armstrong* v. *DuBois*, 90 N. Y. 95.)   Even if the defendants had had in hand, at the time of the foreclosure, rents and profits sufficient to pay the interest, the plaintiffs had no rights therein. (*LeBarron* v. *Babcock*, 122 N. Y. 157.)   The Statute of Limitations is a defense.   (Code Civ. Pro. § 382.)

*Oscar Frisbie* for respondents.   The executors having in their hands and under their control sufficient personal property to pay and discharge all debts and liabilities of the deceased, in whatever form they existed, were bound to pay and discharge them.   (*In re Babcock*, 115 N. Y. 450.)   There is no suspension of the power of alienation beyond the statutory period.   (2 R. S. chap. 1, § 15.)   After the property was sold, it was controlled by the executors, and all the business was conducted by them just the same as before.   This presents a false appearance, and the plaintiffs claim and insist that it is proof of only a pretense of sale.   (Wait on Fraud. Con. § 348.) The defendants have obtained, by fraud, the record title to property which the plaintiffs are entitled to ; they should be held to be trustees *ex maleficio*.   (*Piper* v. *Hoard*, 107 N. Y. 73, 81 ; *O'Hara* v. *Dudley*, 95 N. Y. 403, 415.)   The abuse of confidential relations between trustees and *cestui que trusts*, whereby the trustees obtain, or might obtain, an advantage or a benefit, is illegal and avoids all transactions, in which such relations have been abused.   (*Jones* v. *Jones*, 120 N. Y. 589 ; *Barr* v. *N. Y., L. E. & W. R. R. Co.*, 125 id. 274.)   The evidence clearly shows that the executors embraced the opportunity afforded by their relation to the estate, to gain an undue advantage over the plaintiffs, and by so doing committed a gross violation of their trust for which they should be held to a strict account.   (*Fisher* v. *Bishop*, 108 N. Y. 25 ; *Green* v. *Bowarth*, 113 id. 462.)   Coles A. Carpenter being an executor of the will of James S. Carpenter, deceased, by virtue of which

he had control of the property mentioned in the partition suit, could not purchase said property, and having pretended to purchase it, such purchase is voidable at the option of the respondents. (*Fulton* v. *Whitney*, 66 N. Y. 548; *Scholle* v. *Scholle*, 101 id. 167.)

*Nathaniel C. Moak* for respondents. A judgment or sale obtained by a fraudulent concealment that, with funds of the estate, it was to cut off title of infant wards of the court, and to vest it in the six other heirs, rendered the whole proceeding void even when attacked collaterly. (*Clark* v. *Underwood*, 17 Barb. 202, 221; *Dobson* v. *Pearce*, 12 N. Y. 156, 165; *Mandeville* v. *Reynolds*, 68 id. 529, 542, 546; *O'Mahoney* v. *Belmont*, 62 id. 145.) Defendants were in possession and receipt of the rents and profits. They were under an obligation, as co-tenants, to use them to pay the interest on an incumbrance so small in proportion to the actual value of the real estate. It is a fair presumption that property would pay the interest on so small a proportion of its value. (*Dubois* v. *Campau*, 24 Mich. 361, 368; *Rothwell* v. *Dewees*, 2 Black [U. S.], 613, 618, 619; *Knolls* v. *Barnhart*, 71 N. Y. 474, 480; *Wohlpart* v. *Beckert*, 92 id. 497.) The executors were by the will required to pay the testator's debts. (1 R. S. 749, § 4.) The life tenants were required to keep down the interest. (*Bidwell* v. *Greenshield*, 2 Abb. [N. C.] 431; *Fleet* v. *Dorland*, 11 How. Pr. 489; *Sheldon* v. *Ferris*, 45 Barb. 124, 127; *King* v. *King*, 8 J. & S. 516, 517.) One or more tenants in common who is as much required as the co-tenants to pay an incumbrance cannot as against co-tenants permit a sale on an incumbrance, he, as much as a co-tenant, is required to pay and thereunder obtain a title to effectually cut off the rights of a co-tenant. (*Knolls* v. *Barnhart*, 71 N. Y. 480; *Van Horn* v. *Fonda*, 4 Johns. Ch. 388, 407, 408; *Dubois* v. *Campau*, 24 Mich. 368; *Busch* v. *Huston*, 75 Ill. 343, 347; *Rothwell* v. *Dewees*, 2 Black, 613; *Knolls* v. *Barnhart*, 71 N. Y. 474.)

ANDREWS, J. James S. Carpenter died April 19, 1880, leaving surviving him a widow and seven children, and also

the. children of a son, Smith S. Carpenter, who had died before him, all of whom were minors.     Jesse L. Carpenter, another son of James S. Carpenter, died a few days after his father, leaving a widow and six children, two of full age and the others minors.     James S. Carpenter left real estate of the value of $65,000, and over, and personal property of the value of about $74,000.     His real estate consisted of three parcels, viz.: the "Homestead" farm of about forty-one acres, of the value of $25,000, subject to a mortgage long past due, known as the Duryea mortgage, on which was unpaid $4,000, with interest from November 1, 1879; the "Downing" farm of about seventy-nine acres, of the value of $40,000, subject to a mortgage past due, known as the Downing mortgage, on which was unpaid $5,000, with interest from November 1, 1879, and certain other real estate known as the "Dock" property.

He left a will under which his real estate went to his children and their issue, one-eighth to each child and one-eighth to the issue of his deceased child, subject to a provision for the occupation of the house and lot on the "Homestead" farm by certain members of his family.     The use of his personal property was given to his widow for life, and after her death it was distributable among his children and their issue as in the case of the real estate.     He appointed executors, among whom were his sons Coles A. Carpenter and Charles W. Carpenter, two of the defendants, who alone qualified.     The executors managed and controlled the real estate from the time of the testator's death up to the time of the foreclosures to be mentioned.

The plaintiffs are the children of the testator's two sons, Smith S. Carpenter and Jesse L. Carpenter, and the widow of the latter, and the defendants are the widow and the six children of the testator, who survived him and are still living. The evidence clearly shows that soon after the death of the testator the defendants entered into a scheme to obtain through a foreclosure of the "Duryea" and "Downing" mortgages, title to the property covered thereby, for the purpose of cutting off the interest of the children of the deceased brothers therein.

To this end in September, 1880, they procured the holders of the mortgages to commence foreclosures and under judgments obtained in the foreclosure actions, the property was sold in March and April, 1881, and was bid in by one of the sisters for the amount due on the mortgages respectively, and costs, and immediately after the execution of the referee's deeds the purchaser conveyed to the mother (now deceased) a life estate in the "Homestead" farm, and to each of her five brothers and sisters one-fifth part of the "Homestead" farm, and of the "Downing" farm in fee. Before conveying to her brothers and sisters, Sarah J. Osborn, the purchaser of the foreclosure sales, executed to the holder of the "Downing" mortgage a new mortgage on the lands covered by that mortgage, in payment of the mortgage foreclosed, and to her brothers Coles A. Carpenter and Charles W. Carpenter, as executors, a mortgage for $5,000 on the "Homestead" farm to secure them for money advanced by them out of the estate of James S. Carpenter, to pay the holder of the Duryea mortgage the sum due on that mortgage, and the costs. It is unnecessary to state in much detail the facts tending to show that the foreclosure of the two mortgages mentioned was contrived by the defendants for the purpose of accomplishing the scheme for depriving the children of the two deceased brothers of their share in the inheritance.

The holders of the mortgages had made no demand of principal or interest on their securities. They had allowed them to stand for many years after they became due, without seeking to enforce collection. The interest had been paid up to November 1, 1879, and the foreclosures were commenced in September, 1880. The mortgages were amply secured upon property worth many times their amount, and there is not the slightest reason to suppose that any measure would have been taken at the time by the mortgagees to foreclose the mortgages if they had not been prompted to do so by the defendants. The holder of the Duryea mortgage testified that he was approached by the defendant Coles A. Carpenter, one of the executors, who said: "He would like to have me foreclose the mortgage; that it would be a favor to them all, in order to

settle up the affairs of the estate." The proof is less explicit as to how the foreclosure of the Downing mortgage was brought about, but the circumstances surrounding the transaction preclude any doubt that it was by the active intervention of the defendants.

The judgment in this case adjudges that the title to the "Homestead" farm and to the "Downing" farm, acquired by the defendants under the foreclosure, and the deeds in severalty subsequently made, is held subject to a trust in favor of the plaintiffs, to the extent of a one-fourth interest in the property, and we are asked to reverse the judgment on the ground that the defendants did nothing more than they had a legal right to do, for the purpose of disencumbering their shares of their father's estate of the mortgages and separating their interests in the property.

It would be a matter to be regretted if we should be compelled by any principle of law to uphold a transaction so repugnant to every sentiment of honor and which is instinctively condemned in the forum of conscience. We assent to the claim of the learned counsel for the defendants that before a plaintiff can invoke the action of a court to give him redress of any sort, he must show that at some point in the history of his grievance a right, not ethical merely, but cognizable in the domain of law, has been violated, or that some trust duty owed toward him by some one has been actively or passively disregarded. But that a duty cognizable by the law has been violated in this case by the defendants cannot, we think, admit of doubt. It is probably true that neither the principal or interest of the mortgages was a charge upon or payable out of the personal estate of James S. Carpenter in the hands of his executors (1 Rev. St. 749, § 4), and the general direction in the will to his executors " to pay all just and legal demands against his estate," is insufficient to charge the personal estate with mortgage debts.

But the executors and the other defendants, together with the children of the two brothers deceased, were tenants in common of the real estate. The issue of the deceased brothers

were also interested in the personal property of the testator, the extent of which interest could not be ascertained until an accounting by the executors. The executors took possession of and controlled the real estate from the death of the testator, and received the rents and profits from that time and held them for the common benefit of all the parties interested. It appears that there were several tenement-houses on the " Homestead " lot; that the executors continued to work a clay bed on the premises, selling material therefrom. It is claimed by the defendants that no rents or profits had been received up to the foreclosure, out of which the interest on the mortgages could have been paid. The trial judge refused to find this to be true. The executors kept no account of the rents and profits. They seem to have been handed over to the mother. In the absence of clear proof on the subject, a court, in view of the circumstances, is justified in assuming that the rents and profits of the realty were available and sufficient to have paid the comparatively small amount due for interest on the mortgages, and this clearly is all that the mortgagees, upon the facts shown would, in any event, have required. The executors not only omitted to use the rents and profits for this purpose, or to pay their own share of the interest, but they also loaned the funds of the estate to pay one of the mortgages, for this was the substance of the arrangement in respect to the Duryea mortgage.

The transaction by which some of the tenants in common claim to have acquired the whole estate to the exclusion of their co-tenants, cannot be upheld within the principle of many cases. ( *Van Horne* v. *Fonda*, 5 Jo. Ch. 388 ; *Knolls* v. *Barnhart*, 71 N. Y. 474 ; *Rothwell* v. *Dewees*, 2 Black [U. S.], 613 ; *Dubois* v. *Campau*, 24 Mich. 361.) The defendants and the plaintiffs had a community of interest in a common title, arising under the devise. The defendants, or some of them, were in the actual possession and control of the common property. They were bound to do nothing with a view to prejudice the interests of the plaintiffs. They could not buy in an outstanding title to defeat the right of their co-tenants. If the foreclosure of the

mortgages was a proceeding hostile to the defendants, and they had not been in default, and their purchase was made of necessity to protect their own rights, with full knowledge of the situation on the part of the plaintiffs, the moral, and perhaps the legal, aspect of the case would be altered.  But to permit the plaintiffs, all but two of whom were infants, to be cut off by a proceeding instigated by the defendants for that very purpose, and in the absence of any effort on their part to avert the danger, and when they were in actual possession of the common property, receiving the rents and profits, is not a mere ethical grievance, but one which the law will recognize and redress.  We think the judgment below, so far as it respects the "Homestead" and the "Downing" property, stands upon a firm, equitable and legal foundation.  The subordinate points as to the principle of the accounting, are not, we think, well taken.  Nor do we think that the widow of the testator took the "Homestead" under the will, but that that passed with the other "landed property" to the children and their issue, subject only to the right of occupancy of the house lot under the provision before referred to.

We are of opinion, however, that the General Term erred in reversing the judgment of the Special Term as to the "Dock" property.  The action for the partition of that property was brought a year later than the foreclosures.  It was regularly prosecuted, all parties in interest having been joined in the action and served with process, and a sale made under the judgment.  We think the evidence does not show that any legal duty was violated by the defendants in instituting the partition, or that they can be charged as trustees for the plaintiffs in respect of that property.

The result is that the judgment of the General Term, so far as it reverses the judgment of the Special Term, should be reversed, and that the judgment of the Special Term should in all things be affirmed, without costs to either party in this court.

All concur.

Judgment accordingly.