DETERMINED IN THE

# FIFTH DEPARTMENT

AT

## GENERAL TERM,

### October, 1895.

---

HARVEY A. SWEETLAND, Plaintiff, *v.* FRANKLIN S. BUELL, Individually and as Executor, etc., of JONATHAN S. BUELL, Deceased, and Others, Defendants.

89h 543
a164a541

*Sale under an execution on a judgment in 1819 — not essential that the judgment be docketed — a tenant in common not permitted to purchase an outstanding title for his benefit alone — possession of one tenant in common is the possession of all — when tenants in common are ousted by the act of their co-tenant.*

By the statute of the State of New York in force in 1819 (1 R. L. 500, 501) the docketing of a judgment was not essential to the validity of a sale of the land of a judgment debtor by virtue of an execution issued thereon, but no judgment which had not been docketed could "affect any lands or tenements as to purchasers or mortgagees." The undocketed judgment, however, was a lien upon the land of the judgment debtor and in equity had priority as against a purchaser or mortgagee having notice of such lien when he made the purchase or took his mortgage.

The expression of a consideration in a deed is within the Recording Act *prima facie* evidence that the purchase was for a valuable consideration.

A tenant in common of real estate will not be permitted to purchase an outstanding title to such real estate exclusively for himself, but as between himself and his co-tenants such purchase inures also to the benefit of his co-tenants, and they will be chargeable with their proportionate share of the expense of such purchase.

The possession of one tenant in common is in a legal sense the possession of all of them, until such tenant in common assumes a possession and control notoriously hostile to such relation to his co-tenants, and assumes to have the exclusive right to the premises.

Where one tenant in common with others assumes to sell and convey the entire estate in the premises so owned, and apparently does so by warranty deed, and his grantee takes such conveyance as such and goes into possession claiming

title to the whole, the possession thus taken by the grantee and held by him may be treated as an ouster of the co-tenants and constitutes an adverse possession, which by its continuance for the requisite time will ripen into a title against the other tenants in common.

Motion by the defendants, Franklin S. Buell, individually and as executor, etc., of Jonathan S. Buell, deceased, and others, for a new trial upon a case containing exceptions, ordered to be heard at the General Term in the first instance upon the verdict of a jury in favor of the plaintiff rendered by direction of the court after a trial at the Erie Circuit on the 4th day of January, 1895.

The action was originally commenced against Jonathan S. Buell, who died during its pendency, and the action was continued against the present defendants, the executors of his will and his heirs and devisees.

*Clark H. Timerman,* for the plaintiff.

*George Wadsworth,* for the defendants Franklin S. Buell and others.

Bradley, J.:

The plaintiff seeks to compel the determination of a claim made by Jonathan S. Buell, the original defendant, to certain real property in the city of Buffalo to which the plaintiff alleges title in himself.

The lot in question is part of a tract of land of which Elijah Holt became the owner prior to 1819. On the fifth day of February of that year one Heacock recovered in the Niagara Court of Common Pleas a judgment against Holt for $310, upon which judgment a *fieri facias* was issued to the sheriff, tested June 5, 1819. In the sheriff's deed of date April 12, 1820, it is recited that by virtue of that execution and another issued on a judgment against Holt and one Cotton, and tested February 12, 1820, he seized the land and sold it to Asa Rice and Joseph Clary, " said Asa and Joseph being executors of John Dill of Otsego county, deceased, for the sum of $320." Such recitation is followed by a grant to Rice and Clary of all the estate, title and interest which Elijah Holt had in the premises on the 5th day of February, 1819. At the time of the sheriff's sale Rice and Clary were partners in business in the

village of Buffalo, and, although they were executors of the will of Dill, it may be assumed that by the purchase they became tenants in common of whatever estate in the premises was conveyed by the sheriff's deed. Asa Rice died in 1823, leaving three children, John D., aged eleven years, Norman C., aged five years, and Henry, aged three years.

A warranty deed of date February 5, 1819, expressing a consideration of $1,887.50, and recorded February 6, 1819, was made of the premises by Elijah Holt to Williams Holt, who, by warranty deed of date of October 17, 1829, expressing a consideration of $200, and recorded same day, conveyed premises, including those in question, to Joseph Clary.

By the statute as it then was the docketing of a judgment was not essential to the validity of a sale of land by virtue of an execution issued upon it, but it provided that no judgment which had not been docketed should "affect any lands or tenements as to purchasers or mortgagees." (1 R. L. of 1813, chap. 50, pp. 500, 501, §§ 1, 3.) The undocketed judgment, however, was then a lien, and in equity had priority as against a purchaser or mortgagee having notice of it when he made the purchase or took his mortgage. (*Buchan* v. *Sumner*, 2 Barb. Ch. 165.)

The Heacock judgment against Elijah Holt was not docketed. And, assuming that the judgment was entered prior to the delivery of the deed by the latter to Williams Holt, it did not affect the latter if he was a purchaser without notice of the judgment. The expression of consideration in the deed is, within the Recording Act, *prima facie* evidence that the purchase was for a valuable consideration. (*Hendy* v. *Smith*, 49 Hun, 510; *Wood* v. *Chapin*, 13 N. Y. 509.)

And, as there is no evidence that Williams Holt had any notice of the judgment when he took the conveyance, it cannot be assumed that he then had notice of it. (*Jackson ex dem. Bristol* v. *Elston*, 12 Johns. 452; *Dey* v. *Dunham*, 2 Johns. Ch. 182; *Brown* v. *Volkening*, 64 N. Y. 76.)

The apparent situation, as represented by the record of the deed of Elijah Holt to Williams Holt, was such as to give apprehension that the title might have been conveyed by such deed to the latter. Such was the effect if it was made and taken in good faith for a

valuable consideration. And, therefore, it was desirable to obtain a conveyance from that grantee in support of the title derived from the sheriff's deed. In view of his relation as tenant in common with the heirs of Asa Rice, Clary was not permitted to purchase the outstanding title exclusively for himself; but, as between him and them, such purchase inured to their benefit also, and they were chargeable with their proportionate share of the expense of it. (*Van Horne* v. *Fonda*, 5 Johns. Ch. 388; *Burhans* v. *Van Zandt*, 7 N. Y. 523; *Carpenter* v. *Carpenter*, 131 id. 101.)

But Clary evidently did not contemplate any benefit to the heirs of Asa Rice by his purchase from Holt, as he had before then by warranty deed of date September 13, 1828, recorded November 5, 1828, and expressing a consideration of $1,340, conveyed the premises covered by the sheriff's deed, to Martin Koebel and Adam Pforter. Pforter conveyed to Martin Koebel an undivided half of the premises by warranty deed of date December 31, 1828, recorded March 14, 1868, expressing a consideration of $1,600. Martin Koebel conveyed the premises to Philip Koebel by warranty deed of date August 1, 1864, recorded February 27, 1868, expressing a consideration of $2,500.

The land conveyed by all those deeds was a tract of many acres, and in it was included the premises in question. As early as 1829 the grantees in the deeds had actual possession of the land; occupied and worked it for farming purposes, raising crops upon it annually until it was conveyed by Philip Koebel to Elam R. Jewett by warranty deed of date September 7, 1868, and recorded September 10, 1868, expressing a consideration of $6,000; and after such conveyance the land was occupied and worked for agricultural purposes under and by Jewett until after his conveyance of it to the Parkside Land Improvement Company, which was made by deed of date November 1, 1885, recorded March 16, 1886, expressing a consideration of $44,148. This company having possession of the land, afterwards, in 1888, divided it up into lots, laid out streets, graded it and put the lots on the market. And in May, 1892, the company conveyed to the plaintiff one of the lots, which is the land in question, by deed recorded May 24, 1892. He, thereupon, went into possession of the lot. It is true, as asserted on the part of the defendants, that the possession of one tenant in common is, in the legal sense,

the possession of all of them, until he assumes a possession and control notoriously hostile to such relation to his co-tenants, and assumes to have the exclusive right to the premises ; and it is also true that he cannot convey their interest in the property.

But when one tenant in common assumes to sell and convey the entire estate in the premises and apparently does so by warranty deed, and his grantee takes it as such and goes into possession claiming title to the whole, the possession thus taken by the grantee and held by him, may be treated as an ouster of the co-tenants and it constitutes an adverse possession, and by its continuance for the requisite time will ripen into a title as against them. (*Clapp* v. *Bromagham*, 9 Cow. 530 ; *Bogardus* v. *Trinity Church*, 4 Paige, 178 ; *Town* v. *Needham*, 3 id. 545 ; *Florence* v. *Hopkins*, 46 N. Y. 186 ; *Baker* v. *Oakwood*, 123 id. 16.)

The conclusion was warranted by the evidence that the premises, including the lot in question, were in the actual possession of the grantees under the deeds purporting to convey the entire estate, and that they took the conveyances, and, treating the grants as of that effect, held the possession, claiming title to the whole continuously for more than fifty years, and for more than forty years since the youngest heir of Asa Rice arrived at the age of twenty-one years. By this state of facts the survivors of those heirs were concluded from effectually asserting a claim to any estate in the premises, and their deed of conveyance made in 1892 to Jonathan S. Buell was ineffectual to support any claim thereto in behalf of him or of the defendants who succeeded him in title to his estate. And it is not necessary to inquire whether there was any question of fact arising upon the evidence as to the adverse possession, since the questions presented at the trial were there treated by counsel as those of law only. (*Kirtz* v. *Peck*, 113 N. Y. 222 ; *Winchell* v. *Hicks*, 18 id. 558.) Although Franklin S. Buell and Kate M. Buell, as executors of Jonathan S. Buell, deceased, were not devisees in trust of any estate, they were, by the will of their testator, given power of sale. It seems that they by default permitted the granting of the order bringing them in as defendants for the purpose of the continuance of the action after the death of the original defendant.

They have not alleged any disclaimer by answer, and individually were necessary parties defendant.

There is no occasion furnished on this review to consider any question bearing upon their relation as such personal representatives to the action.

The motion for a new trial should be denied.

WARD and LEWIS, JJ., concurred.

Motion for new trial denied and judgment directed for the plaintiff on the verdict, with costs payable out of the estate of Jonathan S. Buell, deceased.